The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. You may be seated. All right. Good morning. We are ready for our first case, and that is United States of America v. Perez. And we will start, Ms. Hashimoto. Hashimoto. Yes, Your Honor. Erica Hashimoto. I am at the Georgetown Law Center's Appellate Litigation Clinic, and with the Court's permission, Ryan Mentor, a third-year student at the Appellate Litigation Clinic at Georgetown, will be presenting argument on behalf of both Mr. Perez and Ms. Coleman. Thank you. Thank you. All right. Yes, sir. Mr. Mentor. Good morning, Your Honors, and may it please the Court. The District Court's judgment should be reversed because it failed to apply both nights and Hill, the controlling case law. Mr. Perez's supervised release conditions allow for warrantless searches and seizures of his person and property. But person and property does not include residence for two reasons. The first is that the Fourth Amendment gives the most stringent protections to home. And the second, when read into harmony with Mr. Perez's additional supervised release condition, that his home could be visited by probation officers and contrabanded plain view could be confiscated. Person and property must mean something other than residence. Even if the Fourth – even if person and property did include residence, the Fourth Amendment would still bar the evidence from coming in, both because Ms. Coleman was not on notice that her home could be searched, and the requisite standard for believing that Mr. Perez lived at Teal Drive, probable cause, was unsatisfied. And finally, there were numerous disputes as to material fact below, such that granting summary judgment was improper. Turning first to the interpretation of person and property, the inquiry is whether Mr. Perez's expectation of privacy was significantly and unambiguously diminished. That standard comes from Nights, and in Nights, the supervised release condition included person, property, residence, and vehicle. This court's interpretation of Nights and Hill found that the inclusion of residence was critical to Nights' determination. The exclusion of residence should be critical here, too, both because homes are given the most stringent protection under the Fourth Amendment. After all, the chief evil against which the Fourth Amendment was enacted was unreasonable searches of the home. But second, Mr. Perez's supervised release condition included home elsewhere. It allowed for visits and confiscation of contraband found in plain view. If person and property included home, then this additional condition would have been unnecessary because plain view searches, as well as full search and seizures, would have been covered by the former. Mr. Mentor, if property doesn't include homes, then what does property include? Well, here property, Your Honor, would include movable items that were outside of the home. The fact that home is included elsewhere tells us that home wasn't meant to come in within the ambit of person and property, at least for warrantless searches and seizures. For plain view searches, yes, but not for the full search and seizure that we have here. So what you're saying then, Mr. Mentor, is that the term property means tangible property? In this instance, yes, Your Honor. Where home is listed elsewhere, property would mean movable items outside of the home. Okay, aren't you adding words, though, to the term? I'm sorry, Your Honor? We have to add the word tangible to accept your argument, don't we? Not necessarily, Your Honor. This court could hold that property means movable items outside of the home without adding any terms because home is listed elsewhere. Whether it includes beyond tangible items, what it unambiguously excludes is home because home is somewhere else in the search conditions, in the supervised release conditions, rather. And finally, Officer Mosqueda included an inaccuracy in his sworn affidavit. He told the district court in the affidavit that Mr. Perez, quote, as a condition of his supervised release, was required to submit his person, residence, and vehicles to warrantless searches. He further stated that the conditions of release required Perez to, quote, notify other occupants of his residence that the residence could be subject to warrantless searches. But both of those assertions are wrong. If Mr. Perez's supervised release conditions contained such language, that would have put him on notice that his home could have been searched. But neither of those statements were included in the conditions, and the district court relied on those assertions, and that in and of itself is enough for reversal. If we were to agree with you that probable cause is the standard and there was no probable cause here, or at least there's a dispute of fact as to probable cause, do we even need to reach the question about the meaning of – the question of the meaning of property? Yes, Your Honor, because that – the belief that property was included was the justification for searching – for searching the properties. So the belief that home was included within person and property was the basis upon which the home was then searched, thinking that the supervised release condition included home when it did not. But the Teal Drive property wasn't his home, right? Right, Your Honor. It was Ms. Coleman's home. Or at least that's the question about whether they had probable cause to believe that. That he resided there. Yes, Your Honor. So if we were to find that there was a question of fact as to whether they had probable cause, then we could leave for another day the question of the meaning of the word property. Yes, Your Honor. If there was no probable cause to believe that he lived at Teal Drive, then all of the evidence could be kept out under that theory as well. The misstatements that Officer Mosqueda and – Officer Mosqueda made in regards to property wasn't the only misstatement of the record that was relied upon below, Your Honors. Besides Officer Mosqueda, Officer Mani also claimed in affidavits that Mr. Prez was obliged to inform people with whom he shared a home that it could be searched. The district court relied on that too and the government now acknowledges at page 38 of their brief that that assertion was false. In actuality, Ms. Coleman was not on notice that her home could be searched. Ms. Coleman needed at least the same standard as those on supervised release because her expectation of privacy is entirely unimpaired. That standard is that for her who have been unambiguously and significantly – her expectation to have been so diminished that her home could be searched. The government could have required Mr. Prez to inform her that this condition is commonplace in many of the supervised release conditions that are issued today, but they didn't include that provision. As we were just discussing, there also was no probable cause to believe that Mr. Prez lived at Teal Drive in the first instance. Only two circuits have considered whether the proper standard for believing that a supervisee lives at an unregistered dwelling should be reasonable suspicion or probable cause. And both of them, the 8th and the 9th, have held that it should be probable cause for two reasons. The first is that it could possibly implicate, and here it did implicate, the unimpaired privacy rights of non-supervisees. But second, it poses no substantial burden to probation officers that have enough evidence in the first instance to believe that the non-supervisee lives somewhere other than the registered dwelling. There are a number of factors that courts consider in reaching this probable cause determination, such as whether the unregistered dwelling was used as the home base, officers directly saw the supervisee living, coming and going from that place, and whether they had a key. But none of these factors are present here. There's no evidence that Mr. Prez had a key to Teal Drive. The officers, there's no evidence that they saw him coming and leaving from that residence. Now, let me ask you this, but there is evidence that he owned Teal Drive or previously, I guess, resided there. Is that correct? Yes, Your Honor. He previously lived at Teal Drive, and there's evidence that he owned that, but that evidence was not known until after the lease was put into the record. There's a question as to when that was known, that he owned that address, but it certainly doesn't counsel towards a finding that he lived there, especially when we consider that in 2020, Mr. Prez was visited on 12 occasions by Officer Mani, and every single one of those times, he was at Lawndale. He was present and at that address for every single visit. The only evidence that the government could rely upon for the probable cause determination could be the informant, the confidential informant. But this confidential tip is not enough. This court held in Kehoe that anonymous tips are rarely enough because they don't provide a strong enough basis to consider the basis of knowledge and the veracity of the informant and how they know what they're reporting. We have the same problem here. We have no guarantees of reliability or corroboration. Various cases have found reliability and corroboration where the police were able to interview other bar goers, observe the speech patterns of the individual in question. They went and met with the informant, or the informant had given information in the past that led to successful convictions. We have none of those guarantees of trustworthiness here. All we have is an anonymous tip. We don't even know the name of the person, and so there's no reliability or corroboration to be had. And the same problem comes up even if this court were to conclude that reasonable suspicion was the standard instead of probable cause. Corroboration and reliability is required similarly for reasonable suspicion, and we don't have that here either. And finally, your honors, there are a number of genuine disputes as to material facts such that granting summary judgment below is improper. The first was the district court's determination that there is no verifiable source for the income. Mr. Perez worked at Custom Hot Whip South making $1,300 per week. Ms. Coleman at one point had two jobs making between $75,000 and $80,000 per year. And there are bank statements here accounting for nearly all of the funds that were seized. The government faults Mr. Perez for not providing pay stubs to account for some of his Custom Hot Whip's salary. Mr. Perez has said in multiple affidavits that within the blue nylon bag that was seized there are pay stubs in a zippered compartment and those have not been returned. And requiring them to provide pay stubs in the first instance shifts the burden. CAFR places the burden on the government at all times at a preponderance of the evidence. It's not on Mr. Perez and Ms. Coleman to prove that the money here was tainted. That burden falls on the government and it remains with them. Another question of material fact was the conclusion that such sums of money near drugs always leads to the inescapable conclusion that drug trafficking was afoot. McClellan expressly rejected such a conclusion, finding that where there are multiple plausibilities as there are here, one that there was drug trafficking afoot and the other that there are innocent explanations for the items that were seized, then summary judgment is improper. And in those cases where trafficking was found there were vastly different amounts of money, huge sums, hundreds of thousands of dollars. One case had 18 pounds of marijuana, another had 2,500 grams of controlled substances. Here we're talking about 2 grams of heroin, 1.7 grams of fentanyltramadol mixture and $25,000, nearly all of which is accounted for with bank records. Another dispute was what the presence of heroin means. Mr. Perez says it's for pain management and personal use and the government says that the very small quantity that was found is indicia of trafficking. And the last genuine dispute was the presence of cocaine in the home. The government asserted that the 8 ounces of white powder that was seized from the kitchen was cocaine. Then they changed their mind and claimed it was fentanyl. The lab reports have come back and indicated that it tested negative for all controlled substances. In short, the government's case is anything but airtight, which is what this court said it needed to be a McClellan for summary judgment. And the grant of summary judgment here was improper. If the court has no further questions, we would respectfully ask that the judgment below be reversed and the case remanded with instructions to dismiss the verified complaint. Thank you. All right. Thank you. All right. Next, we will hear from Mr. Stroop on behalf of the government. Thank you. Good morning. May it please the court. Nathan Stroop for the appellee, United States of America. If it pleases the court, I would like to start by discussing the reasonable suspicion and probable cause issue in this case, because I believe it lies at the heart of this appeal. And I want to make clear that this is a case of first impression for not only this circuit, but for all circuits. Although Mr. Perez and Ms. Coleman have cited cases out of the Eighth Circuit and Ninth Circuit for the proposition that probable cause is the standard to be applied to determine whether there is sufficient suspicion that a defendant is residing at a secret residence, this case is significantly different because it involves a probationary search by the U.S. Probation Office. In the cases in the Ninth Circuit and the Eighth Circuit, those were state parolees, and the searches were conducted by ordinary law enforcement officers. As this court knows, U.S. Probation Officers have a very significant but limited interest to serve in the criminal justice system. What about the interests of the other resident of the property, Ms. Coleman? Doesn't that factor into the analysis at all? It does. It does indeed. And considering in Knight's, the Supreme Court noted that this court must balance the interests of third parties, the Fourth Amendment interests, against the governmental interests and strike a balance. That balance is struck here, even considering Ms. Coleman's Fourth Amendment rights, by the application of reasonable suspicion. But it's pretty sketchy information that they had, isn't it? I mean, we know the probation officer, quote, conducted surveillance, but we don't know what that entailed, do we? I look at the facts and circumstances in two categories, Judge Kanan. In one category, we have sort of historical facts and circumstances that had some age on them, granted, by the time the search of both Lawndale Drive and Teal Drive was conducted on January 4th, 2021. Those are the tip of the confidential reliable source, which, by the way, is not an anonymous tip. It's a confidential reliable source tip. We had surveillance by the U.S. Probation Office of Mr. Perez with no further detail in the record, I would like to highlight. Yes, I would like there to be in the record additional detail as to what that surveillance entailed, but we are limited to the record. And probation office knew that Mr. Perez had lived at Teal Drive from September 2016 to April 2019, and they also knew that he had a history of violating the conditions of his supervised release. Now, those are the sort of, I'll call them the historical facts. Then we have the day of evidence. On the day of the search of Teal Drive, before that search began, U.S. Probation learned a lot of material facts here that pertain to both reasonable suspicion and, if this court applies, probable cause. They searched the Lawndale Drive location that he had reported living. They found prescription pill bottles with his name, Mr. Perez's name on it, and the address of Teal Drive. Let me ask you about that because my understanding of the events of the day is that they were searching the Teal Drive and Lawndale simultaneously. So they were already at Lawndale, right? That is incorrect, Your Honor. If you review the record at JA 19-20, that is the declaration of the TFO officer that was attached to the government's complaint and submitted in support of summary judgment here. It is clear from that account that the Lawndale Drive search was conducted first, and then they moved to the Teal Drive location. It is also consistent with Mr. Perez's declaration in this case at JA 94, which entails the search at Lawndale Drive, and then, next, the search at Teal Drive. But were they already—my understanding is they were already headed to Teal Drive or at Teal Drive. There is some overlap in the time of being at Lawndale and Teal. I think what was contemporaneous was that, granted, U.S. Probation had determined to search both properties before they left the office. But what actually happened, and it's supported by the record, is that the Lawndale Drive property was searched first, and then they went to the Teal Drive location. And so all facts and circumstances that they learned, which are significant from the Lawndale Drive search, apply to the—whatever legal standard, reasonable suspicion, or probable cause that this Court applies to the Teal Drive. What you say that they were significant facts and circumstances, what else other than the prescription bottles with the Teal Drive address did they find that led them to have either reasonable suspicion or probable cause that the Teal Drive address was, in fact, the address of the residence? Is there anything else? I mean, I think a number of us don't change, necessarily, our address with our pharmacy after we move. We keep picking up pills at CVS, and it's got our old address, and it takes a while to update your address. Granted, not everyone updates their address with the pharmacy, but in terms of the totality of circumstances, I think that that's a material fact. In addition, to answer your question, Judge Berner, at the Lawndale search, Mr. Perez drove up in his van, and a canine dog was deployed, and it alerted to the presence of the odor of narcotics on the van. The van was searched. A trap compartment was found within the van that is consistent with storing or transporting narcotics. And what's the connection between that and Teal Drive? That's more tied to drug activity, but if there is a tie to Teal Drive, and I think that there is, probation had received a tip, information from a confidential, reliable source that Mr. Perez was living at Teal Drive and back involved in drug activity. When they find evidence suggesting that, yes, he is involved in drug activity, that is beginning to corroborate the information received from the confidential source. Let me ask you this, though. So they go to Lawndale. He is there. The job of probation is monitoring the probationer. Is that correct? That is correct. But what's not correct is that he was at Lawndale when they arrived. Well, he shows up there. He does show up there. And based on what you just said, they didn't search Teal until after he showed up and found the pill bottle, I think, in the car. So if the purpose of probation and their job is to monitor the probationer, they find drugs and other contraband at Lawndale, why would, at that point, they search, have a warrantless search of Teal Drive? It seems to me as at that point, and law enforcement was there, that that would have been the point where you say, hey, let's get a warrant from a magistrate and then search Teal Drive. One of the suspected violations was drug activity. Another suspected violation was failing to report the residence. I understand, but the violation as to the probationer, him being on probation. So it seems as if Lawndale, for probation's purposes, they met, they came, they found what they were looking for, he's in violation of his probation. They have the evidence to present he's in violation, based on his presence at Lawndale and the contraband that they found at Lawndale. Maybe I can clear that up because I don't think that they found contraband at Lawndale. I think that they found facts and circumstances giving rise to probable cause or reasonable suspicion that they're going to find contraband at Teal Drive, which is exactly what the confidential reliable source advised them. He's living there. He's back conducting drug activity there. And another fact and circumstances at Lawndale. Is it true that the canine search that you describe occurred after the decision to go to Lawndale and search Lawndale? Excuse me, to go to Teal Drive and search Teal Drive? Yeah, I think it's clear on the record that the decision to search both residences was made before the first search of Lawndale. And before the canines. And before the canines. So how could it be? My first question I asked is what facts were sufficient to form either reasonable suspicion or probable cause? And what I've heard from you is the pillboxes and the anonymous informant. Is there anything else? Yes, there is. He also denied knowledge of Teal Drive when law enforcement said, okay, we're going to be heading over to Teal Drive. He says, I don't know anything about Teal Drive. Reasonable inference is that that's incorrect. We know that. He used to live there. Probation knew that. Why is he lying to the probation officers? Reasonable inference is he doesn't want to be connected to Teal Drive. Why? Because that's where he actually lives and that's where they're going to find evidence of drug activity, which is exactly what happened. Well, get back to the confidential informant for a minute. What is there in the record that shows the reliability of this confidential informant? We have the probation officer's declaration saying that after he received this information, he conducted an investigation including surveilling. Right, but we don't know what that investigation was. It seems to me it's kind of a house of cards. If you don't have anything in the record to establish the reliability of the confidential informant, then the confidential informant's information isn't worth a lot. It could just be anybody.  And then you're attempting to build on that foundation the probation officer's statement that the probation officer conducted surveillance, but we don't know what the surveillance was. So it seems to me you're asking us to kind of pile inference upon inference rather than providing a solid factual basis for why you think there was grounds to go into that house on Teal Drive. I think historically, the historical facts I refer to, we need more. Fortunately, we have day of evidence from Lawndale that further corroborates the information from the confidential reliable source that Mr. Perez was living back at Teal Drive. They find pill bottles. He denies any knowledge of Teal Drive and the drug activity as well by the dog alert and the trap compartment. So that information, I think, reasonably, again, the touchstone of the Fourth Amendment is reasonableness. I think that reasonably corroborates the information from the confidential reliable source and gets them into the door at Teal Drive.  Let me ask you this. Mr. Mentor brought up this point regarding Mr. Perez's own probation and his, I guess, his consent to the terms of his probation, and how does that diminish the Fourth Amendment rights of Ms. Coleman? Who's at the house? She says this is my apartment. She and her daughter are there, and I don't consent to the search, and they pretty much said go outside and we're going to search anyway. Right. I don't think that Mr. Perez, to answer your direct question, Judge Benjamin, Mr. Perez's consent does not diminish a third party's Fourth Amendment rights. That is not the position of the United States. The position of the United States is we need to determine what's reasonable under the facts and circumstances and strike a balance. And given the special government interests that probation serves, that this court has recognized as recent as yesterday in an unpublished opinion released yesterday in U.S. v. Morocco, probation serves, U.S. probation serves important government interests in protecting the community from future crimes, combating recidivism, and promoting the rehabilitation and reintegration of the defendant. They're there to help them. These are very limited but very significant interests that must be balanced against Ms. Coleman's Fourth Amendment rights. And I think on the balance, you strike the balance at reasonable suspicion. I think the record supports reasonable suspicion. Alternatively, if this court were to hold probable cause, I think we could rely on the record here that supports probable cause. Do you think it matters that Mr. Perez was not at the Teal Drive? Does it matter that he was not there? Considering he's the probationer, that probation is monitoring, that he was not at the Teal Drive address? Under the facts and circumstances, of course, all facts and circumstances matter that are material to that. I would never say no. But we have to look at the facts and circumstances and apply common sense. He drove up while the search was going on to Lawndale from where the record is signed. He was placed in custody, and I believe it's in the record that he was taken back to Teal Drive. I'm not 100% sure on that. But, of course, he would not be at Teal Drive when that search was conducted because he had arrived at Lawndale Drive and was taken into custody at that time. So in your brief, you say that Coleman's expectation of privacy was diminished. Are you no longer standing by that position? I'm not pursuing that argument today. I think we have stronger arguments in terms of the government interest served by the probation office in striking a balance against third parties' interests. And that's something, that's an issue no court of appeals has taken up in the context of U.S. probation. The Supreme Court, in its trilogy of cases discussed by all the parties in this case, Griffin, Knights, and Sampson, have repeatedly recognized the special, important, substantial, and overwhelming, their words, interests served by the probation office in the criminal justice system. If probable cause were to be the standard applying to U.S. probation officers, that would de facto cause them to seek a warrant in this situation. And that would replace their judgment with the judgment of a magistrate judge. Well, what's wrong with that when you have a situation? I mean, we've already said in Brinkley, Judge Motz's opinion about five years ago, said that the police need probable cause to enter a residence. Didn't they? They did. Ordinary law enforcement, yes, not U.S. probation. And the Supreme Court, on multiple occasions, had said, we should not be slowing down probation officers. We should not be requiring them to go get a warrant. These people need, they serve a special interest, they need to act quickly to serve the interests that I've outlined here. But you have to have the facts behind you. See, that's what's bothering me about your case, is that they were always visiting, the probation office was visiting him, Mr. Perez, at Longdale Drive, weren't they? They were, and I'd like to clear up in the record because it's at least implied. How many times had they visited him at Longdale Drive? They were monthly visits in 2020. I want to make clear, because I believe Mr. Perez. It was 12, right? I'm sorry? 12 visits, right? 12 visits, 12 monthly visits. Okay, so there was a strong historical record that he could be found at Longdale Drive. Not, I would say no. Why is that? And that's the point I wanted to get to, is in their reply brief, they at least imply that Mr. Perez was home, he answered the door, hello, how are you doing? That is not in the record. There is nothing in the record, and I'm not going to go off the record, but there's nothing in the record to support any allegation that Mr. Perez was home during those 12 visits. But it's interesting that he shows up at Longdale Drive when they arrive, and he shows up at Longdale Drive. I think that the problem I have is the job of probation is to monitor and supervise the probationer. He's not at Teal Drive. And so I guess that's where I'm hung up, is that he's not at Teal Drive. He shows up at Longdale, and at Longdale, he's there, probation is there, and then that's when that search occurs. It just seems as if it would have been more, it seems like it would have been proper to then at that point get a search warrant to search Teal Drive if you said you had probable cause. And I think that that's what ultimately happened shortly after the Teal Drive. But not until they go in the house and start going through the kitchen. It wasn't even plain view. I mean, if you want to get into the whole property, is it property and what can be searched, they go in and they start searching because they find the cocaine and what, lemonade? Suspected white powder.  That, yes, was later tested and was not shown to be a controlled substance. Okay. So they go, but they are clearly in the kitchen looking through things in the kitchen with no warrant, and then they go back and get a warrant to search the entire house. Correct. That's when the sheriff's deputies were there to assist, do that. That is correct. Your honor. In the, in the one minute I had unless the court has more. And I think, and I don't mean to cut you off there, but Mr. Troop, I've got a question too. Let's let's, let's say we disagree with you. We find that probable cause was required. And the probable cause is not shown on this record. What do we do with the case? I'm glad you asked that question. Because why would the government get a second chance to prove its case? When it didn't put on the evidence in the first place to meet the probable cause standard, if that's what we find. So what do we do with the case? Do we send it back or not send it back to determine who gets what money? Or are you saying that the entire case is still in play, that the government gets a second bite at the apple. And gets to try to prove its case under the probable cause standard. Where are we left? If we disagree with you on the issue of probable cause under that scenario, I think this court would remand the case to the district court to apply the correct standard because the district court applied reasonable suspicion. If this court determines that the correct standard is probable cause, then we need to give the district court the opportunity and the parties, the opportunity to take up that standard and hold a hearing. Just have a couple more seconds. I wanted to add because there's a traditional motion for summary judgment argument here that largely depends on the McClellan case. The differences between McClellan in this case are night and day based on the evidence. The evidence in McClellan was extremely thin as this court noted. And here we have a proverbial mountain of evidence that includes serious drugs, 195 oxycodone pills, money counters, digital scales, money bag, handguns, ammunition, all found within, in and around, hidden bulk U.S. currency. We also have the claimants, Mr. Perez and Ms. Coleman, have both either pled guilty or been found guilty of drug crimes tied to the possession of heroin with the intent to distribute it. I think this is a strong collection of evidence that if we get to that stage will support the summary judgment for the government. And I ask that the court affirm the district court's judgment. If the court has no more questions, this submits our argument. Thank you. Thank you.  Yes, sir, Mr. Mentor. Thank you, Your Honors. The government relies on various items from Lawndale to claim that the probable cause standard was satisfied. And I'd like to go through a couple of those. The first is the prescription bottle. No case has ever held that forgetting to change your name with a pharmacy is indicative of probable cause that you live at an address. Many of us forget that our address is registered at a different place and we continue to just pick up medications and we don't change it. Probable cause has never been found in that instance. There's also a question about whether the canine alerted on the van at all. There was also nothing found in the trap compartment. But perhaps the most important point about both the bottle and the van is that the government concedes at pages 323 and 324 of the joint appendix that that evidence was found in the search of the alert on the van or the alleged alert on the van was after they already made the determination that they were going to search Lawndale. I'm sorry, to search Teal. That information added nothing to the analysis at all. The government relies on the conclusory assertion that there was surveillance and follow-up investigative tips without anything more. This tip came in in December of 2019 and the search was in January of 2021. The government had 14 months to provide anything, something more than these conclusory allegations for the court to find both reliability and corroboration. They have failed to do so. Next, the government has conceded that Mr. Perez's consent would not have diminished Ms. Coleman's privacy expectations, so a warrant would have been required to search the home. The government argues that for probable cause, the proper remedy if this court determines that as the standard would be a remand, but that would give the government a second crack at putting evidence in. They've already put evidence in. It wasn't enough to establish probable cause, and they shouldn't be granted a second bite at the apple, if you will, to try again. But the primary evidence that was relied upon anyway has tested negative for controlled substances. And finally, on the summary judgment point, the government argues that this case is much weaker than McClellan. There are actually a lot of elements to this case that are stronger than McClellan. There was no cocaine found on the money. The funds weren't being driven around with in a car. There were small quantities of drugs and money. And there are logical explanations for each of the items that were found here. To just go through a few, the scales Mr. Perez has said were used for weighing personal quantities of marijuana. The cell phones were for his car business, for employees. They were disconnected. And there are explanations for each and every one of those items. Lastly, the government makes much of the Alford plea that was entered by Mr. Perez. Mr. Perez did not plead guilty. He entered a plea in accordance with Alford v. North Carolina, admitting that the government had enough evidence to prove their case, but not a guilty plea. And even with those pleas intact, the burden is still on the government to prove that this money, all of this seized money, is connected to drug trafficking. They cannot do so here. I have a question about the 14-month period between the confidential informant and the search. Were the 12 visits to Lawndale in that time period? In other words, did the probation officer continue to go to Lawndale after the confidential tip? Yes, they did, Your Honor. At no point did they go to Teal. The confidential tip was received in December of 2019. They visited Lawndale once per month from January through the end of December 2020. Never once going to Teal, Mr. Perez was at Lawndale every time. And in January of 2021 was when they searched both residences. If the court has no further questions, we would respectfully ask that the judgment be reversed and the case remanded with instructions to dismiss the verified complaint. Thank you. Thank you. Thank you, and I wanted to acknowledge the Georgetown Law School and thank Professor Hashimoto and also Mr. Mentor for being here and recognize that they are court appointed and thank you for being here and for your service. At this time, we'll step down and greet counsel, and we will get ready for our next case. Thank you.
judges: DeAndrea Gist Benjamin, Nicole G. Berner, Barbara Milano Keenan